PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x 101
Fax: (888) 975-1957
mbendat@psych-appeal.com

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (*pro hac vice* forthcoming)
Jason S. Cowart (*pro hac vice* forthcoming)
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

ZUCKERMAN SPAEDER LLP
Caroline E. Reynolds (*pro hac vice* forthcoming)
Rachel F. Cotton (*pro hac vice* forthcoming)
1800 M St., NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
creynolds@zuckerman.com
rcotton@zuckerman.com

*Attorneys for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE, as the representative of her minor son, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH and UNITED HEALTHCARE SERVICES, INC.,<br><br>Defendants. | Case No. 3:19-cv-7316<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Jane Doe, a pseudonym ("Plaintiff"),[1] complains as follows as a representative of her minor son, John Doe, and on behalf of all others similarly situated, based on the best of her knowledge, information and belief, formed after an inquiry reasonable under the circumstances by herself and her undersigned counsel, against Defendants:

## INTRODUCTION

1. Plaintiff's son, John Doe, is a minor (currently age 13) who has been diagnosed with Autism Spectrum Disorder ("ASD" or "autism"). As a result of his condition, John has severe difficulties interacting with the world around him. As he has entered adolescence, John has shown increasing aggression, including violent outbursts, making it extremely difficult for his mother, with whom he resides, to provide him with safe and effective care. John's healthcare providers have continuously recommended that he receive a treatment called Applied Behavior Analysis ("ABA") for his ASD.

2. ABA is generally accepted as an effective form of treatment for minors with ASD. ABA is a type of therapy that focuses on specific maladaptive or stereotypic behaviors and targets social skills and adaptive learning skills (fine motor dexterity, hygiene, grooming, domestic capabilities, punctuality, and vocational competence). It has been shown through substantial research that consistent ABA can significantly improve behaviors and skills for autistic patients. Indeed, the American Academy of Child and Adolescent Psychiatry ("AACAP") reports that of all clinical non-educational interventions, ABA has been the most widely shown in scientific research to improve the ability of autism patients to adapt to their environment and engage with those around them. By contrast, the AACAP reports in its *Practice Parameter for the Assessment*

---

[1] Plaintiff challenges Defendants' denial of intensive behavioral therapy for her son who has been diagnosed with Autism Spectrum Disorder. Because Plaintiff is filing on behalf of her minor son and mental illness remains subject to pervasive stigma, Plaintiff has legitimate concerns about publicly disclosing her or her son's identity. Thus, Plaintiff has chosen to file this action pseudonymously, using "Jane Doe" for herself and "John Doe" for her son. Her identity and that of her son will be fully disclosed to Defendants and to the Court, so long as such identifying information is not released into the public record. Plaintiff's motion to proceed under a pseudonym will be filed nearly contemporaneously with this complaint, pending assignment of a judge and case number.

*and Treatment of Children and Adolescents with Autism Spectrum Disorder* (2014), that there is a lack of evidence for most other forms of psychosocial intervention for ASD.

3. Studies have further demonstrated that ABA is most successful when intensely applied for up to 40 hours a week and beginning at as early an age as possible.

4. Plaintiff sought coverage under John's father's health benefits plan for John to begin ABA treatment, but Defendants denied coverage, relying upon a plan term that purports to exclude coverage for Intensive Behavioral Therapies ("IBT") for mental health conditions like ABA for autism. The IBT Exclusion, however, violates the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 ("Federal Parity Act"), codified at 29 U.S.C. § 1185a. As a result, the exclusion is unenforceable as a matter of federal law and Defendants' application of it to deny coverage to Plaintiff's son breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.

5. Through this action, Plaintiff seeks to enforce ERISA and the Federal Parity Act, on behalf of her son and all others similarly situated who have been injured as a result of Defendants' implementation of illegal and discriminatory IBT exclusions in self-funded plans.

**THE PARTIES**

6. Plaintiff's son is insured as a beneficiary under the Wipro Limited Plan (the "Wipro Plan" or the "Plan"), which is a self-funded large group, non-grandfathered commercial policy sponsored by John's father's employer, Wipro Limited. The Wipro Plan, identified as a UnitedHealthcare "Choice Plus (CDHP) Option 1" plan, is governed by ERISA and is administered by Defendants. Plaintiff and her son reside in Union City, California.

7. Defendant United Healthcare Services, Inc. ("UHS"), a subsidiary of UnitedHealth Group ("UHG" and, together with Defendants, "United") and a claims administrator of health insurance plans issued by United nationwide, is based in Minnetonka, Minnesota. UHS is the designated "Claims Administrator" for the Wipro Plan and other self-funded plans administered by United, with the delegated fiduciary responsibility to make all final and binding coverage determinations under the plans.

-2-

CLASS ACTION COMPLAINT
CASE NO. 3:19-CV-7316

8. In its capacity as Claims Administrator, Defendant UHS delegated responsibility to its corporate affiliate, Defendant United Behavioral Health ("UBH"), to make benefit coverage determinations for mental health and substance use disorder services under the plans United administers, including the Wipro Plan. United delegates to Defendant UBH the responsibility and discretion to administer ABA benefits, because autism is a mental health condition. Defendant UBH is a corporation organized under California law, with its principal place of business in San Francisco, California.

9. Based on the role Defendants play in making benefit determinations under the Wipro Plan, and other self-funded plans administered by United, they are both fiduciaries under ERISA, responsible for discharging their duties solely in the interests of plan participants and beneficiaries while ensuring that the Plans they administer comply with ERISA and its parity requirements.

**JURISDICTION AND VENUE**

10. Defendants' actions in administering employer-sponsored health care plans, including exercising discretion with respect to determinations of coverage for Plaintiff's son under the Wipro Plan, are governed by ERISA, 29 U.S.C. § 1001, *et seq.* This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 1132(e) (ERISA).

11. Venue is appropriate in this District. Defendants administer plans in this District and conduct significant operations here. Defendant UBH is headquartered here, and Plaintiff and her son also reside in this District.

**INTRADISTRICT ASSIGNMENT**

12. This case should be assigned to the San Francisco Division pursuant to Civil L.R. 3-2(c), (e). Defendants administer plans in this District and conduct significant operations here. Defendant UBH is headquartered here, and Plaintiff and her son also reside in this District.

# STATEMENT OF FACTS

**I.    Defendants Know ABA is Effective for Treating ASD.**

13. On June 17, 2016, UnitedHealth Group, the parent corporation of both Defendants, announced that, effective January 1, 2017, it would extend ABA coverage to all of its fully insured health plans (*i.e.*, those for which United underwrites the plans for a premium and pays the medical expenses out of its own assets). In making this announcement, United noted that as of May 2016, 46 states and the Virgin Islands had already mandated ABA coverage for the treatment of autism under fully insured health insurance plans. Thus, United's change in policy merely extended ABA coverage to the few states that had not yet mandated it. (Currently, all 50 states mandate some form of coverage for ABA.)

14. However, United's policy change and the state mandates do not apply to the ***self-funded*** plans, like the WiPro Plan, that United continues to administer (*i.e.*, those plans that pay United an administrative fee to serve as a claims administrator, while benefits are paid from an employer/plan sponsor's own assets). With respect to self-funded plans, any state laws are completely preempted by ERISA.

15. Operating under the name Optum, UBH has issued a clinical policy concerning ABA, entitled "Behavioral Clinical Policy: Applied Behavioral Analysis," which it uses to administer ABA benefits when plans cover them. In describing the service, UBH states:

> ABA is a scientific discipline among the helping professions that focuses on the analysis, design, implementation, and evaluation of social and other environmental modifications to produce meaningful changes in human behavior. ABA includes the use of direct observation, measurement, and functional analysis of the relations between environment and behavior. ABA uses changes in environmental events, including antecedent stimuli and consequences, to produce practical and significant changes in behavior. ABA is based on the fact that an individual's behavior is determined by past and current environmental events in conjunction with organic variables such as their genetic endowment and physiological variables. Thus, when applied to ASD, ABA focuses on treating the problem of the disorder by altering the individual's social and learning environments.

16. UBH's clinical policy holds that ABA "is proven for the treatment of autism spectrum disorder" when appropriately provided by a health care professional with proper training. It further specifies that, once a patient is diagnosed with ASD and is offered a treatment plan, UBH will approve ABA coverage for up to 8 hours per day or 40 hours per week.

17. UBH's clinical policy also summarizes the clinical evidence in support of the treatment's efficacy, noting that "[c]onclusions from several recent systematic reviews and meta-analyses suggest that the evidence to support the use of applied behavior analysis for ASD has improved, particularly over the last decade," with "[a] number of these studies report[ing] medium to large effects of intensive behavioral therapies on improvements in communication and adaptive behavior."

18. Despite recognizing the effectiveness of ABA and the illegality of excluding such treatment from coverage, United continues to enforce ABA exclusions when administering self-funded plans, like the Wipro Plan. It does so because this increases the likelihood that UBH will be retained by the self-funded plan sponsors to administer their plans. This is highly significant, since approximately 78% of United's business involves self-funded plans.

## II.   Defendants are the Claims Administrators for the Wipro Plan and Owe Fiduciary Duties to Plaintiff's Son.

19. The Wipro Plan explicitly identifies Defendant UHS as the "Claims Administrator" for the Plan, and states that "Wipro Limited has delegated to the Claims Administrator the discretion and authority to decide whether a treatment or supply is a Covered Health Service and how the Eligible Expenses will be determined and otherwise covered under the Plan." The Plan further states that the use of the words "Claims Administrator" in the Plan "is a reference to United HealthCare Services, Inc., on behalf of itself and its affiliated companies." As the Plan's designated Claims Administrator, and as the entity who administers claims for medical/surgical benefits under the plan, Defendant UHS is a fiduciary under ERISA.

20. As the Claims Administrator, UHS delegated to its affiliated company, Defendant UBH, final and binding responsibility to make all benefit determinations regarding behavioral health services, including those services sought by Plaintiff to treat her son's ASD. UBH's

discretionary authority is confirmed in adverse benefit determination letters UBH sent to Plaintiff to report that ABA would not be covered, in which UBH states: "United Behavioral Health (UBH) is responsible for making benefit determinations for mental health and substance abuse services that are provided to UBH members." As the behavioral health claims administrator for the Wipro Plan, Defendant UBH is also a fiduciary under ERISA.

21. As ERISA fiduciaries, Defendants owe the participants and beneficiaries of the plans they administer fiduciary duties, including the duties of prudence, due care, and loyalty. ERISA specifies that fiduciaries must discharge their duties solely in the interests of plan beneficiaries and participants, and "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of" ERISA. *See* 29 U.S.C. § 1104. This means that, among other things, Defendants owe plan participants and beneficiaries a fiduciary duty to comply with ERISA, and must not enforce plan terms that create illusory benefits or violate the law.

22. ERISA not only imposes liability where a fiduciary itself breaches its duties, but also where a fiduciary participates in another fiduciary's breach, or where the fiduciary knows about another fiduciary's breach but does not take reasonable steps to stop it. Indeed, ERISA even imposes liability on non-fiduciaries who knowingly participate in a fiduciary's breach.

### III. ERISA Requires Behavioral Health, if Covered at all, to be Covered at Parity with Medical/Surgical Conditions.

23. The Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 ("Federal Parity Act"), codified at 29 U.S.C. § 1185a, amended ERISA to prohibit discrimination with respect to mental health and substance use disorder benefits. Because the parity provisions were inserted into ERISA, they are enforceable through ERISA's enforcement provision, 29 U.S.C. § 1132.

24. Since the addition of the parity provisions, ERISA requires any group health plan (like the Wipro Plan), which "provides both medical and surgical benefits and mental health or substance use disorder benefits," to ensure that:

(ii) the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

25. ERISA's implementing regulations explain that "treatment limitations" may be quantitative (expressed numerically) or non-quantitative, which otherwise limit the scope or duration of benefits for treatment under a plan or coverage. An exclusion of benefits for specific services—especially for the services most widely recognized as the primary treatment for otherwise covered conditions—constitutes an illegal treatment limitation if it is solely imposed on mental health and/or substance use benefits.

### IV. The Wipro Plan's IBT Exclusion Applies to Behavioral Health Conditions Only, and Thus Violates Parity.

26. The Wipro Plan explicitly covers neurobiological disorders, expressly including Autism Spectrum Disorder, at all levels of care. In describing covered services, the Plan states:

> The Plan pays Benefits for psychiatric services for Autism Spectrum Disorder (otherwise known as neurodevelopmental disorders) that are both the following:
>
> - Provided by or under the direction of an experienced psychiatrist and/or an experienced licensed psychiatric provider;
>
> - Focused on treating maladaptive/stereotypic behaviors that are posing danger to self, others and property and impairment in daily functions.

27. Although ASD is expressly covered, the Wipro Plan explicitly *excludes* coverage for "Intensive Behavioral Therapies such as Applied Behavior Analysis for Autism Spectrum Disorders" (the "IBT Exclusion"). The IBT Exclusion applies only to mental health and substance use disorder services (often collectively called "behavioral health services"), including services for autism.

28. The IBT Exclusion in the Wipro Plan appears under the heading "Mental Health/ Substance Use Disorder," in a section that enumerates exclusions that "apply to services

-7-
CLASS ACTION COMPLAINT
CASE NO. 3:19-CV-7316

described under Mental Health Services, Neurobiological Disorders – Autism Spectrum Disorder Services and/or Substance-Related and Addictive Disorders Services."

29. Although this section lists "neurobiological disorders" as though they fall in a separate category from mental health conditions, in fact the Plan makes clear that such disorders, including autism, are mental health conditions. The Wipro plan defines "Mental Illness" as "those mental health or psychiatric diagnostic categories listed in the current edition of the *International Classification of Diseases section on Mental and Behavioral Disorders* or the *Diagnostic and Statistical Manual of the American Psychiatric Association*." The plan further defines "Mental Health Services" as "Covered Health Services for the diagnosis and treatment of those mental health or psychiatric categories that are listed in the current edition of the *International Classification of Diseases section on Mental and Behavioral Disorders* or the *Diagnostic and Statistical Manual of the American Psychiatric Association*."

30. The current editions of the *International Classification of Diseases section on Mental and Behavioral Disorders* and the *Diagnostic and Statistical Manual of the American Psychiatric Association* both expressly categorize autism as a mental disorder.

31. No other provision in the Wipro Plan purports to make the IBT Exclusion applicable to medical or surgical conditions, nor is there any other comparable exclusion of coverage for "intensive" therapies for medical or surgical conditions.

32. The IBT Exclusion, therefore, is a separate treatment limitation that applies only to behavioral health services. As such, the IBT Exclusion violates the Federal Parity Act provisions of ERISA, 29 U.S.C. § 1185a, which require ERISA plans to treat behavioral health conditions, including ASD, in "parity" with medical/surgical conditions. By categorically excluding coverage of intensive therapies (like ABA) solely for behavioral health disorders (such as ASD), while continuing to provide coverage for the primary, most widely recognized treatments for covered medical/surgical conditions, the IBT Exclusion imposes a separate treatment limitation exclusively on covered behavioral health conditions and thereby violates parity.

33. As the designated Claims Administrator for the Wipro Plan, and as the delegated behavioral health claims administrator for the Plan, Defendants UHS and UBH both know or

should know the terms of the Plan and know or should know that the IBT Exclusion, on its face, applies solely to behavioral health conditions.

### V. As ERISA Fiduciaries, Defendants are Prohibited from Enforcing the Illegal IBT Exclusion.

34. As ERISA fiduciaries, Defendants are required to interpret plan terms in a reasonable manner and to ensure that the ERISA plans they administer comply with ERISA. Thus, Defendants are prohibited as ERISA fiduciaries from applying plan provisions that unreasonably restrict coverage or violate ERISA, including its parity provisions. Thus, because the IBT Exclusion contained in the Wipro Plan violates ERISA, Defendants, as ERISA fiduciaries, are prohibited from enforcing the exclusion.

35. Similarly, ERISA plans such as the Wipro Plan must be interpreted to incorporate substantive ERISA requirements like the parity provision, so as to avoid creating conflicts between the Plan and the statutory mandates. Thus, when making benefit determinations, Defendants must interpret the Wipro Plan to cover ABA, so as to avoid making benefit decisions that violate ERISA.

36. As explained further below, Defendants failed to satisfy these fiduciary obligations when UBH applied the illegal IBT Exclusion to deny coverage to Plaintiff's son.

### VI. Defendant UBH Denied Coverage for John's ABA.

37. Plaintiff has sought authorization from United for ABA coverage for her son since 2016, when he was nine. Despite numerous requests and repeated appeals, including communications from both Plaintiff and her son's providers, Defendants have consistently denied coverage based on the IBT Exclusion in the Wipro Plan and Plaintiff's previous plan, which was also a self-funded plan that contained an IBT Exclusion.

38. Plaintiff lives with her son on a modest income and cannot afford to pay for ABA, so John currently remains unable to obtain such treatment, which he desperately needs. Because John has not been able to receive ABA, he has repeatedly decompensated, required police interventions and hospitalization, and Plaintiff has incurred substantial emergency medical expenses.

39. After one particularly violent incident in May of 2019, Plaintiff again sought coverage for ABA for John. Although UBH's case notes reflect that UBH recognized that ABA was the appropriate treatment for John, UBH denied coverage.

40. By letter dated May 8, 2019, UBH issued an initial adverse benefit determination letter confirming that it would not cover ABA for John under the Wipro Plan, stating:

> United Behavioral Health (UBH) is responsible for making coverage determinations for mental health and substance abuse services that are provided to UBH members. The available of benefit coverage for a service is determined by the terms of your benefit plan. . . .
>
> I have reviewed the request for your child's treatment and I have determined that coverage is not available under your child's benefit plan for the requested services of intensive behavioral therapies.
>
> As noted in the Summary Benefit Description for Wipro LTD on page 74, ***intensive behavioral therapies such as applied behavioral analysis for Autism Spectrum Disorder are excluded under the plan***.

(emphasis added).

41. Plaintiff submitted an urgent appeal from that denial on June 17, 2019, and expressly put UBH on notice that the IBT Exclusion violated ERISA and that UBH's failure to authorize ABA precluded John from attaining maximal function.

42. More than a month later, on July 22, 2019, UBH denied the urgent appeal, stating:

> United Behavioral Health (UBH) is responsible for making coverage determinations for mental health and substance abuse services that are provided to UBH members. The available of benefit coverage for a service is determined by the terms of your benefit plan. . . .
>
> You requested an appeal of the previous full denial of Applied Behavioral Analysis (ABA). . . . I have determined the previous decision will be upheld. ***Your child's Summary Plan Description for Wipro LTD section pertaining to Exclusions states that Intensive Behavioral Therapies such as Applied Behavioral Analysis for Autism Spectrum Disorders are excluded from benefit coverage. Therefore, this service is non-covered and excluded from insurance benefit coverage.*** Your child can have the following services instead of ABA: Outpatient counseling,

> Medication Management, Academic services provided through the Individuals with Disabilities Education Act.

(emphasis added).

43. Consistent with the Wipro Plan's appeal requirements, John's father faxed an urgent, second-level appeal to UBH on August 9, 2019 and again (with supplements) on August 11, 2019.

44. UBH issued a "final adverse determination" letter nearly a month later, on September 4, 2019, in which it stated:

> United Behavioral Health (UBH) is responsible for making benefit coverage determinations for mental health and substance use disorder services that are provided to UBH members . . .
>
> You requested an appeal of the previous full denial, of Applied Behavior Analysis (ABA). I have reviewed the Optum Behavioral Clinical Policy Applied Behavioral Analysis for Autism Spectrum Disorder I reviewed your child's benefit plan I reviewed the available clinical information on this request. I have determined the previous decision will be upheld. ***Your child's Summary Plan Description for WIPRO LTD section pertaining to Exclusions states that intensive behavioral therapies such as Applied Behavior Analysis for Autism Spectrum Disorders are excluded from benefit coverage. This exclusion was in both the 2018 and 2019 plan documents. Therefore, this service is non-covered and excluded from insurance benefit coverage***.

(emphasis added.)

45. UBH's September 4, 2019 letter further states, "[t]his is the Final Adverse Determination of your internal appeal. All internal appeals through UBH have been exhausted."

46. Thus, consistent with the policy and practice announced by United in 2017, Defendant UBH applied and enforced the self-funded Wipro Plan's illegal IBT Exclusion to preclude coverage for John's ABA, in violation of its fiduciary duties under ERISA.

47. Defendant UHS, who delegated to UBH the responsibility for administering behavioral health benefits under the Plan, knows or should know that UBH's policy and practice is to enforce IBT Exclusions contained in self-funded plans. Because Defendant UHS did not

take reasonable steps to prevent its co-fiduciary from violating its fiduciary duties, UHS is equally liable under ERISA for the fiduciary breach.

**VII. Defendants' Breaches of Fiduciary Duty Have Harmed, and Continue to Harm, Plaintiff's Son.**

48. By applying and enforcing the Wipro Plan's illegal IBT Exclusion, Defendant UBH has rendered the Plan's coverage of autism treatment a near nullity, since UBH has interpreted the Plan to preclude coverage for the most effective treatment for that mental health condition. UBH has also subjected Plaintiff's son to discrimination by interpreting the Plan to provide substantially inferior coverage for his autism than it does for medical/surgical conditions. In addition, because UBH's coverage determinations were based on the illegal IBT Exclusion, its denials of coverage for John's ABA treatment were wrongful and caused him injury.

49. Moreover, Plaintiff is unable to afford to pay for John's ABA treatment out-of-pocket. As result, UBH's denial of Plaintiff's repeated requests for pre-authorization of coverage have precluded, and continue to preclude John from receiving ABA treatment at all.

## CLASS CLAIMS

50. It is United's announced policy and practice to continue to apply IBT Exclusions that are contained in self-funded plans administered by United companies, including Defendants UHS and UBH. Defendants continue to enforce these exclusions even though the exclusions violate ERISA, including its parity protections.

51. Moreover, on information and belief, United companies, including UHS, regularly offer self-funded plans the option of incorporating an IBT Exclusion into their plans. As a result, many United plans in addition to the Wipro Plan contain substantively the same illegal exclusion of coverage for intensive therapies for behavioral health conditions, and Defendant UBH, with the knowledge and acquiescence of Defendant UHS, consistently applies and enforces such exclusions to deny coverage for such behavioral health services to participants and beneficiaries of those plans. Thus, Defendants have harmed the class members in the same way as they have harmed Plaintiff's son.

52. To address these ERISA violations, Plaintiff, as a representative of her minor son, seeks relief on his behalf and behalf of the following Class:

> All participants or beneficiaries in self-funded ERISA plans administered by United Healthcare Services, Inc. and United Behavioral Health that contain an exclusion of coverage for Intensive Behavioral Therapies applicable solely to mental health or substance use disorder services (including Applied Behavioral Analysis for Autism Spectrum Disorder), whose requests for coverage for Intensive Behavioral Therapy were denied by UBH based on such exclusion.

53. Common class claims and issues exist for the Class, including, but not limited to, the following:

    a. Whether Defendants are ERISA fiduciaries;

    b. Whether an IBT Exclusion violates ERISA's parity protections, 29 U.S.C. § 1185a;

    c. Whether Defendant UBH's legal duties (fiduciary or otherwise) prohibited it from applying the IBT Exclusion because the exclusion violates ERISA's parity protections;

    d. Whether Defendant UHS's legal duties (fiduciary or otherwise) required it to take reasonable actions to prevent Defendant UBH from applying the illegal IBT Exclusion, and whether UHS did so; and

    e. What remedies are available for Defendants' ERISA violations.

54. The members of the Class are so numerous that joinder of all members is impracticable. Defendants are among the largest claims administrators in the country. While the number of class members is solely within the possession of Defendants, Plaintiff in good faith believes that the Class consists of at least hundreds if not thousands of ERISA beneficiaries.

55. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class, including the class action claims and issues listed above.

56. Plaintiff's claims are typical of the claims of the Class members because, as alleged herein, the IBT Exclusion applied to deny coverage to Plaintiff's son was also applied to deny coverage to the other members of the Class.

57. Plaintiff will fairly and adequately protect the interests of the members of the Class, is committed to the vigorous prosecution of this action, has retained counsel competent and experienced in class action and ERISA health insurance-related litigation, and has no interests antagonistic to or in conflict with those of the Class.

58. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because joinder of all members of the Class is impracticable. Further, the expense and burden of individual litigation make it irrational for Class members individually to redress the harm done to them. Moreover, because this case involves Class members who suffer from behavioral health conditions, and those who suffer from such conditions continue to experience social stigma, it is unlikely that many Class members would be willing to have their conditions become public knowledge by filing individual lawsuits. Given the uniform policy and practices at issue, there will also be no difficulty in the management of this litigation as a class action.

**COUNT I**
**Claim for Breach of Fiduciary Duty**
**Against Defendant UBH**

59. Plaintiff incorporates by reference the preceding paragraphs as though such paragraphs were fully stated herein.

60. Plaintiff brings this count, on behalf of her son and all others similarly situated, pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B).

61. As an ERISA fiduciary, Defendant UBH was required to discharge its duties in compliance with ERISA's parity provisions, *see* 29 U.S.C. § 1185a; to carry out its duties solely in the interests of the participants and beneficiaries of the plans; and to exercise reasonable prudence and due care.

62. Yet, UBH applied and enforced the IBT Exclusion in Plaintiff's son's and the class members' plans, even though the exclusion violates ERISA's parity provisions, and even though interpreting a plan to categorically exclude the premier and most effective treatment for an otherwise covered condition is unreasonable and contrary to the interests of the participants and

beneficiaries. In doing so, UBH breached its fiduciary duties to Plaintiff's son and the members of the class.

63. UBH's application of the illegal IBT Exclusion, moreover, rendered UBH's denial of coverage to Plaintiff's son wrongful and a violation of ERISA.

## COUNT II
## Claim for Injunctive Relief Against Defendant UBH

64. Plaintiff incorporates by reference the preceding paragraphs as though such paragraphs were fully stated herein.

65. Plaintiff brings this count, on behalf of her son and all others similarly situated, pursuant to ERISA, 29 U.S.C. § 1132(a)(3)(A), only to the extent that the Court finds that the injunctive relief available pursuant to 29 U.S.C. § 1132(a)(1)(B) is inadequate to remedy the violations alleged in Count I.

66. Plaintiff and the Class have been harmed, and are likely to be harmed in the future, by Defendant UBH's breaches of fiduciary duty and/or violations of ERISA and its parity provisions described above.

67. In order to prevent UBH's ongoing violations of ERISA, and the harm those violations cause, Plaintiff and the Class are entitled to enjoin these acts and practices pursuant to 29 U.S.C. § 1132(a)(3)(A).

## COUNT III
## Claim for Appropriate Equitable Relief Against Defendant UBH

68. Plaintiff incorporates by reference the preceding paragraphs as though such paragraphs were fully stated herein.

69. Plaintiff brings this count, on behalf of her son and all others similarly situated, pursuant to ERISA, 29 U.S.C. § 1132(a)(3)(B), only to the extent that the Court finds that the equitable relief available pursuant to 29 U.S.C. § 1132(a)(1)(B) is inadequate to remedy the violations alleged in Count I.

70. Plaintiff and the Class have been harmed, and are likely to be harmed in the future, by Defendant UBH's breaches of fiduciary duty and/or violations of ERISA and its parity provisions described above.

71. In order to completely and adequately remedy these harms, Plaintiff and the Class are entitled to appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3)(B).

## COUNT IV
### Against Defendant UHS

72. Plaintiff incorporates by reference the preceding paragraphs as though such paragraphs were fully stated herein.

73. Plaintiff brings this count, on behalf of her son and the Class, pursuant to 29 U.S.C. § 1132(a)(3)(A) and (B), against Defendant UHS as a knowing participant in the ERISA violations and breaches of fiduciary duty by Defendant UBH alleged in Count I above.

74. Defendant UHS knew, or in the exercise of due care, should have known, that Defendant UBH was applying and enforcing the illegal IBT Exclusions at issue in this action, yet UHS took no action to prevent UBH from doing so, even though the exclusions violated ERISA and UBH's actions breached its fiduciary duties. By failing to make reasonable efforts to prevent or remedy its co-fiduciary's breaches, UHS breached its own fiduciary duties to Plaintiff's son and the members of the class.

75. As set forth above, Plaintiff's son and the members of the Class have been harmed by the ERISA violations detailed herein in which UHS knowingly participated.

76. Plaintiff and the members of the Class seek the relief identified below to remedy this claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in her favor against Defendants as follows:

A. Certifying the Class and appointing Plaintiff as Class Representative and Plaintiff's Counsel as Class Counsel;

B.     Declaring that Defendants violated their legal obligations in the manner described herein;

C.     Declaring that the IBT exclusions in Plaintiff's son's and the class members' plans violate ERISA's parity provisions and are therefore void and unenforceable as a matter of law;

D.     Permanently enjoining Defendants from enforcing the IBT exclusions at issue herein and from denying benefits to Plaintiff's son or the class members on the basis of those IBT exclusions;

E.     Ordering Defendants to reprocess Plaintiff's son's and the class members' wrongfully denied requests for coverage without applying the illegal limitations described herein;

F.     Ordering other appropriate equitable relief, including but not limited to an appropriate monetary award based on disgorgement, restitution, surcharge or other basis;

G.     Awarding Plaintiff disbursements and expenses of this action, including reasonable attorneys' fees, in amounts to be determined by the Court; and

H.     Granting such other and further relief as is just and proper in light of the evidence.

Dated: November 7, 2019                    PSYCH-APPEAL, INC.

/s/ Meiram Bendat
Meiram Bendat (Cal. Bar No. 198884)

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (*pro hac vice* forthcoming)
Jason S. Cowart (*pro hac vice* forthcoming)
Caroline E. Reynolds (*pro hac vice* forthcoming)
Rachel F. Cotton (*pro hac vice* forthcoming)

*Counsel for Plaintiff and the Putative Class*