PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x 101
Fax: (888) 975-1957
mbendat@psych-appeal.com

ZUCKERMAN SPAEDER LLP
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

ZUCKERMAN SPAEDER LLP
Caroline E. Reynolds (admitted *pro hac vice*)
Rachel F. Cotton (admitted *pro hac vice*)
1800 M St., NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
creynolds@zuckerman.com
rcotton@zuckerman.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| JANE DOE, as the representative of her minor son,<br><br>Plaintiff,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH and UNITED HEALTHCARE SERVICES, INC.,<br><br>Defendants. | Case No. 4:19-cv-07316-YGR<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      August 18, 2020<br>Time:      2:00 p.m.<br>Location:  Courtroom 1<br><br>Complaint Filed:  November 7, 2019 |

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES, COUNSEL OF RECORD, AND THE COURT:

PLEASE TAKE NOTICE that on August 18, 2020 at 2:00 p.m., via Zoom, Plaintiff Jane Doe, a pseudonym, as the representative of her minor son, John Doe, will and hereby does move this Court to enter partial summary judgment in her favor and rule that at all relevant times, the Wipro Plan's categorical exclusion of coverage for Intensive Behavioral Therapies for Autism Spectrum Disorder violated the Parity Act and was void as a matter of law.

This motion is based on Federal Rule of Civil Procedure 56(a), the Court's directives at the May 11, 2020 status hearing in this matter, and on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and Supporting Separate Statement, Plaintiff's Appendix of Exhibits in Support of her Motion for Partial Summary Judgment, and Declaration of Caroline E. Reynolds, all pleadings on file in this matter, and other matters as may be presented to the Court at the time of the hearing or otherwise.

# ISSUE TO BE DECIDED

1. Whether the categorical exclusion of coverage for Intensive Behavioral Therapies for Autism Spectrum Disorder contained in the Wipro Limited Plan from 2017-2019 violated the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, 29 U.S.C. § 1185a.

Dated: June 1, 2020                    ZUCKERMAN SPAEDER LLP

                                       s/ Caroline E. Reynolds
                                       D. Brian Hufford (admitted *pro hac vice*)
                                       Jason S. Cowart (admitted *pro hac vice*)
                                       Caroline E. Reynolds (admitted *pro hac vice*)
                                       Rachel F. Cotton (admitted *pro hac vice*)

                                       PSYCH-APPEAL, INC.
                                       Meiram Bendat (Cal. Bar No. 198884)

                                       *Counsel for Plaintiff*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................................. 1

II.   UNDISPUTED FACTS ........................................................................................................ 1

III.  LEGAL STANDARD ........................................................................................................... 3

IV.  ARGUMENT ........................................................................................................................ 3

    A.    The Parity Act's Anti-Discriminatory Purpose......................................................... 3

    B.    The Parity Act Prohibits the Wipro Plan's IBT Exclusion ...................................... 4

        1.    The IBT Exclusion is a "Separate Treatment Limitation" that is "Applicable Only" to Mental Health Benefits . .......................................... 5

            (a)    The IBT Exclusion is a "Treatment Limitation" .............................. 5

            (b)    The IBT Exclusion Only Applies to Mental Health Disorders ....... 7

        2.    The IBT Exclusion Also Violates the Parity Act Because It Is More Restrictive than the Predominant Treatment Limitations Applied to Substantially All Medical and Surgical Benefits Covered by the Plan ...... 8

V.   CONCLUSION................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.F. ex rel. Legaard v. Providence Health Plan*,
   35 F. Supp. 3d 1298 (D. Or. 2014) .................................................................. 6, 8, 9, 10

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
   821 F.3d 352 (2d Cir. 2016) ............................................................................................ 4

*Brandenburg v. Miley Petroleum Expl. Co.*,
   16 F.2d 933 (N.D. Cal. 1926) .......................................................................................... 4

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ......................................................................................................... 3

*Clicks Billiards Inc. v. Sixshooters Inc.*,
   251 F.3d 1252 (9th Cir. 2001) ........................................................................................ 3

*Craft v. Health Care Serv. Corp.*,
   84 F. Supp. 3d 748 (N.D. Ill. 2015) ........................................................................... 6, 8

*Joseph F. v. Sinclair Servs. Co.*,
   158 F. Supp. 3d 1239 (D. Utah 2016) ............................................................................ 8

*Kaiser Steel Corp. v. Mullins*,
   455 U.S. 72 (1982) ........................................................................................................... 5

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ......................................................................................................... 3

*McHenry v. PacificSource Health Plans*,
   679 F. Supp. 2d 1226 (D. Or. 2010) ............................................................................... 9

*Munnelly v. Fordham Univ. Faculty*,
   316 F. Supp. 3d 714 (S.D.N.Y. 2018) ............................................................................ 6

*N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*,
   980 F. Supp. 2d 527 (S.D.N.Y. 2013) ............................................................................ 4

*Parents League for Effective Autism Servs. v. Jones-Kelley*,
   565 F. Supp. 2d 905 (S.D. Ohio 2008) .......................................................................... 9

*Parents' League for Effective Autism Servs. v. Jones-Kelley*,
   339 F. App'x 542 (6th Cir. 2009) .................................................................................. 9

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
   469 U.S. 189 (1985) ......................................................................................................... 7

*Potter v. Blue Cross Blue Shield of Mich.*,
    No. 10-cv-14981, 2013 WL 4413310 (E.D. Mich. Mar. 30, 2013) ............................................ 9

*Sebelius v. Cloer*,
    569 U.S. 369 (2013) ................................................................................................................ 7

*Smith v. United Healthcare Ins. Co.*,
    No. 18-cv-06336-HSG, 2019 WL 3238918 (N.D. Cal. July 18, 2019) ..................................... 4

*State Farm Fire & Cas. Co. v. Geary*,
    699 F. Supp. 756 (N.D. Cal. 1987) ......................................................................................... 3

**Regulations**

29 C.F.R. § 2590.712 ............................................................................................................... 5, 8

45 C.F.R. § 146.136 .................................................................................................................. 5, 6

**Rules**

Fed. R. Civ. P. 56(a) ..................................................................................................................... 3

**Statutes**

29 U.S.C. § 1185a ................................................................................................................ *passim*

**Other Authorities**

153 Cong. Rec. S1864 (daily ed. Feb. 12, 2007) .......................................................................... 3

154 Cong. Rec. H8619 (daily ed. Sept. 23, 2008) ........................................................................ 3

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Applied Behavioral Analysis ("ABA") is a proven, effective, and standard treatment for children with Autism Spectrum Disorder ("Autism"). Nevertheless, Defendant United Behavioral Health ("UBH") repeatedly denied Plaintiff's requests for coverage of ABA for her son, John Doe. UBH's denials were not based on any alleged lack of medical necessity. They were entirely based on a provision in the Wipro Limited Plan (the "Wipro Plan" or "the Plan"), of which John was a beneficiary, which purported to exclude all coverage for "Intensive Behavioral Therapies such as Applied Behavioral Analysis for Autism Spectrum Disorders" (the "IBT Exclusion"). Pl.'s Supporting Separate Statement ("Supp. Stmt.") at Fact 14. UBH enforced the exclusion even though, on its face, it applied only to Autism, a mental health condition, and even though the Plan contained no comparable treatment limitations that applied to medical/surgical conditions.

"[S]eparate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits" are unambiguously prohibited under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (the "Parity Act"). *See* 29 U.S.C. § 1185a(a)(3)(A)(ii). So too are "treatment limitations" that are "more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan." *Id.* As set forth in detail below, the Wipro Plan's IBT Exclusion violated both of these provisions of the Parity Act. Because the IBT Exclusion was prohibited by federal law, it was void and unenforceable. Plaintiff respectfully requests that this Court enter Partial Summary Judgement in her favor on this point.

**II.    UNDISPUTED FACTS**

From 2017 through the end of 2019, John Doe was a beneficiary of the Wipro Plan, which is a self-funded large group, non-grandfathered commercial policy sponsored by Wipro Limited. *See* Supp. Stmt. at Facts 1, 45. At all relevant times, the Wipro Plan provided health benefits for both medical/surgical conditions and mental health conditions, including Autism. *Id.* at Facts 9-

10.[1] Defendant United Healthcare Services, Inc. ("UHS") is the Claims Administrator for the Wipro Plan, and has delegated to UBH the authority to administer mental health and substance use disorder benefits under the Plan. *Id*. at Facts 3-4.

Although the Plan expressly covered Autism, from 2017 through 2019, it explicitly ***excluded*** coverage for "Intensive Behavioral Therapies such as Applied Behavior Analysis for Autism Spectrum Disorders" (the "IBT Exclusion"). *Id.* at Facts 9-10, 14.[2] On the face of the Plan, the IBT Exclusion applied only to a mental health condition—specifically, services for Autism. *Id.* at Facts 11-12, 16-22, 25. The Plan did not contain any comparable exclusion of coverage for services applicable to medical/ surgical conditions. *Id.* at Facts 42-43.

John Doe has been diagnosed with Autism, and his mother has repeatedly sought coverage for ABA services on his behalf. *Id.* at Facts 46-48. UBH, however, has consistently denied coverage for ABA services for John, based solely on the IBT Exclusion in the Wipro Plan. *Id*. at Facts 49-55. These denials came in the face of UBH's express recognition of ABA's effectiveness as a treatment for Autism, as outlined in its "Behavioral Clinical Policy: Applied Behavior Analysis," *id*. at Fact 28, and the fact that ABA is widely-accepted as a standard treatment—if not *the* standard treatment—for Autism. *See id.* at Facts 29-41.

As directed by the Court at the May 11, 2020 status hearing, Plaintiff files this Motion for Partial Summary Judgment to obtain a ruling on whether the Wipro Plan's IBT Exclusion violated the Parity Act and whether it was, therefore, unenforceable as a matter of law when UBH denied Plaintiff's requests for coverage of John's ABA.

---

[1] The Plan listed Autism under the heading "neurobiological disorders," but also defined "Mental Illness" as "those mental health or psychiatric diagnostic categories listed in the current edition of the *International Classification of Diseases section on Mental and Behavioral Disorders* or the *Diagnostic and Statistical Manual of the American Psychiatric Association*." Supp. Stmt. at Facts 21-22; *see also id.* at Fact 19. Both sources categorized Autism as a mental disorder. *Id*. at Facts 23-25.

[2] The IBT Exclusion has been removed from the 2020 version of the Plan. Supp. Stmt. at Fact 15.

## III. LEGAL STANDARD

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Partial summary judgment that falls short of a final determination, even of a single claim, is authorized by Rule 56 in order to limit the issues to be tried." *State Farm Fire & Cas. Co. v. Geary*, 699 F. Supp. 756, 759 (N.D. Cal. 1987).

The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court views the evidence in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV. ARGUMENT

The IBT Exclusion is a blatant example of the discrimination the Parity Act sought to outlaw. On its face, it treats those who suffer from a mental health condition—Autism—less favorably than members of the Wipro Plan who suffer from medical or surgical conditions.

### A. The Parity Act's Anti-Discriminatory Purpose

In 2008, Congress passed the Parity Act with broad bipartisan support to ensure access to mental health services by preventing insurers from discriminating against insureds with mental illnesses. As Representative Patrick Kennedy, a sponsor of the legislation, explained, "[a]ccess to mental health services is one of the most important and most neglected civil rights issues facing the Nation [and for] too long, persons living with mental disorders have suffered discriminatory treatment at all levels of society." 153 Cong. Rec. S1864 (daily ed. Feb. 12, 2007); *see also* 154 Cong. Rec. H8619 (daily ed. Sept. 23, 2008) (statement by Rep. James Ramstad that Parity Act seeks to "end the discrimination against people who need treatment for mental illness and addiction" and "prohibit health insurers from placing discriminatory barriers on treatment").

Courts that have examined the Parity Act have emphasized the statute's anti-discriminatory

1  purpose. Just last year, this Court found that "Congress enacted the [Parity Act] to end
2  discrimination in the provision of insurance coverage for mental health and substance use disorders
3  as compared to coverage for medical and surgical conditions in employer-sponsored group health
4  plans." *Smith v. United Healthcare Ins. Co.*, No. 18-cv-06336-HSG, 2019 WL 3238918, at *3
5  (N.D. Cal. July 18, 2019) (quoting *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d
6  352, 356 (2d Cir. 2016)). In the same tone, the Southern District of New York has noted that
7  "ERISA plans must treat sicknesses of the mind in the same way that they would a broken bone."
8  *N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 980 F. Supp. 2d 527, 542 (S.D.N.Y. 2013).
9      Thus, the purpose of the Parity Act was to ensure that health insurers could not restrict
10 access to mental health benefits when they were not placing comparable restrictions on access to
11 medical and surgical care. Yet this is precisely what the IBT Exclusion did.

**B.   The Parity Act Prohibits the Wipro Plan's IBT Exclusion.**

The Parity Act states, in relevant part, that any group health plan "that provides both medical and surgical benefits and mental health or substance use disorder benefits" (like the Wipro Plan does, Supp. Stmt. at Fact 9) must ensure:

> The treatment limitations applicable to such mental health or substance use disorder benefits are ***no more restrictive*** than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan . . . and there are ***no separate treatment limitations*** that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185a(a)(3)(A)(ii) (emphasis added). Thus, the statute contains two independent prohibitions: (1) it prohibits "separate treatment limitations" that apply only to mental health benefits; and (2) it prohibits limitations on mental health treatment that are "more restrictive" than the "predominant treatment limitations" applied to medical/surgical benefits. As explained below, the IBT Exclusion violated both prohibitions.

Because the IBT Exclusion violated the Parity Act, it was void and unenforceable as a matter of law. As a general rule, "[w]henever a statute is made for the protection of the public," a provision in violation of the statute will be void. *Brandenburg v. Miley Petroleum Expl. Co.*, 16

F.2d 933, 933 (N.D. Cal. 1926). And, contracts and other agreements will not be enforced when they are made illegal by federal law. *See Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (1982) ("our cases leave no doubt that illegal promises will not be enforced in cases controlled by the federal law").

          1.    <u>The IBT Exclusion is a "Separate Treatment Limitation" that is "Applicable Only" to Mental Health Benefits</u>.

The Parity Act flatly prohibits *any* "separate treatment limitations" that apply only to mental health benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii). Because the IBT Exclusion is exactly that, —a separate treatment limitation that applies only to mental health benefits—it is illegal.

          (a)    The IBT Exclusion is a "Treatment Limitation."

The Parity Act defines "treatment limitations" to include all "limits on the frequency of treatment, number of visits, days of coverage, or other similar limits on the scope or duration of treatment." 29 U.S.C. § 1185a(a)(3)(B)(iii). Under the Final Rules implementing the Parity Act, treatment limitations include both "quantitative" and "non-quantitative" treatment limitations. 45 C.F.R. § 146.136(a); *see also* 29 C.F.R. § 2590.712(a) ("Treatment limitations include both quantitative treatment limitations, which are expressed numerically (such as 50 outpatient visits per year), and nonquantitative treatment limitations, which otherwise limit the scope or duration of benefits for treatment under a plan or coverage.").

This definition clearly encompasses the IBT Exclusion, which limited the frequency, number of visits, days of coverage, and scope and duration of IBT therapy for plan members with Autism. The fact that it was an *absolute* limitation—a categorical exclusion—of particular kinds of Autism treatment did not place it outside of the statutory definition of a treatment limitation.

The Parity Act's implementing regulations, moreover, demonstrate that an exclusion of coverage for a treatment for a mental health condition constitutes a "treatment limitation." For example, "[m]edical management standards limiting or excluding benefits based on medical necessity or medical appropriateness or based on whether the treatment is experimental or investigative" constitute nonquantitative treatment limitations. 45 C.F.R. § 146.136(c)(4)(ii)(A). The regulations also set forth a number of illustrative examples of plan provisions that violate the

5

Parity Act. Example 10 is instructive; it discusses a plan that "excludes coverage for inpatient, out-of-network treatment of chemical dependency when obtained outside of the State where the policy is written" and has no similar exclusion of benefits for medical/surgical conditions. The Example makes clear that an exclusion of coverage for out-of-state treatment for a substance abuse disorder qualifies as a treatment limitation. 45 C.F.R. § 146.136(c)(4)(iii). Thus, the IBT Exclusion—like, for example, experimental, medical necessity, or geographic location exclusions—is a "treatment limitation" within the meaning of the Parity Act.

Indeed, at least one federal court has found that an exclusion *exactly* like the one at issue here is a treatment limitation (and an illegal one) under the Parity Act. In *A.F. ex rel. Legaard v. Providence Health Plan*, the U.S. District Court for the District of Oregon was asked to determine whether a health plan's blanket exclusion of ABA treatment for Autism under an exclusion for services related to developmental delays (the "Developmental Disability Exclusion") violated the Parity Act. 35 F. Supp. 3d 1298, 1302 (D. Or. 2014). As here, the plan at issue in *A.F.* explicitly covered treatment for Autism but excluded all coverage for ABA. *Id.* In determining the Developmental Disability Exclusion was a treatment limitation under the Parity Act, the *A.F.* court held the "plain and ordinary meaning of 'treatment limitation' includes and encompasses" the plan's total exclusion of ABA therapy services related to Autism. *Id.* at 1315.

Other federal courts, further, have confirmed that blanket exclusions of treatment options for mental health disorders constitute treatment limitations that violate the Parity Act. As one example, in *Craft v. Health Care Service Corp.*, the Northern District of Illinois held the categorical exclusion of residential treatment for mental health disorders was a treatment limitation that violated the Parity Act. 84 F. Supp. 3d 748, 754 (N.D. Ill. 2015). Likewise, in *Munnelly v. Fordham University Faculty*, the Southern District of New York held that a plan's categorical exclusion of coverage for mental health residential treatment services violated the Parity Act. 316 F. Supp. 3d 714, 733-34 (S.D.N.Y. 2018).

So too here. The IBT Exclusion in the Wipro Plan entirely rules out ABA treatment (or any other form of Intensive Behavioral Therapy) for individuals with Autism. Under the most natural, commonsense reading of the statutory language, the IBT Exclusion is unquestionably a

6
PL.'S MOT. FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 4:19-cv-07316-YGR

"limitation" on the "treatment" of Autism. "[W]hen [a] statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Sebelius v. Cloer*, 569 U.S. 369, 381 (2013) (citation omitted); *see also Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."). Here, the statutory language is clear and the IBT Exclusion is a "treatment limitation" under the Parity Act.

      (b)  The IBT Exclusion Only Applies to Mental Health Disorders.

As noted above, the Parity Act requires that health insurance plans have "no separate treatment limitations that are *applicable only with respect to mental health* or substance use disorder benefits." 29 U.S.C. §1185a(a)(3)(A)(ii) (emphasis added). Here, the Wipro Plan does *exactly* what the Parity Act prohibits. The IBT Exclusion applies specifically and exclusively to Autism, a mental health condition. The exclusion thus squarely violates the Parity Act.

The IBT Exclusion appears in the Wipro Plan under the heading "Mental Health/ Substance Use Disorder," within a section that enumerates exclusions that only "apply to services described under Mental Health Services, Neurobiological Disorders – Autism Spectrum Disorder Services and/or Substance-Related and Addictive Disorders Services." Supp. Stmt. at Facts 14-18. Despite the fact this section references "neurobiological disorders" as though they fall in a separate category from mental health conditions, the Wipro Plan makes clear that such disorders, including Autism, are a subset of mental health conditions.

Specifically, the Wipro Plan defines "Mental Illness" as "those mental health or psychiatric diagnostic categories listed in the current edition of the *International Classification of Diseases section on Mental and Behavioral Disorders or the Diagnostic and Statistical Manual of the American Psychiatric Association*." *Id.* at Fact 21; *see also id*. at Fact 19 (2017-2018 definition citing *Diagnostic and Statistical Manual* only). The 2019 Wipro Plan further defines "Mental Health Services" as "Covered Health Services for the diagnosis and treatment of those mental health or psychiatric categories that are listed in the current edition of the *International Classification of Diseases section on Mental and Behavioral Disorders or the Diagnostic and*

7

*Statistical Manual of the American Psychiatric Association.*" *Id*. at Fact 22. The applicable editions of the *International Classification of Diseases section on Mental and Behavioral Disorders* and the *Diagnostic and Statistical Manual of the American Psychiatric Association* both expressly categorize autism as a mental disorder. *Id.* at Facts 23-25.

Further, the Wipro Plan defined Intensive Behavioral Therapy as "outpatient behavioral/educational services that aim to reinforce adaptive behaviors, reduce maladaptive behaviors and improve the mastery of functional age appropriate skills ***in people with Autism Spectrum Disorders***." *Id.* at Fact 11 (emphasis added). At the same time, no provision in the Wipro Plan purported to make the IBT Exclusion applicable to any medical or surgical conditions. *See id.* at Facts 14-28. Thus, the IBT Exclusion specifically and explicitly applied only to coverage of services for Autism, a mental health condition.

The IBT Exclusion, on its face, was a separate treatment limitation applicable only to services for a mental health condition (Autism), which plainly violated the Parity Act. *A.F.*, 35 F. Supp. 3d at 1315 (holding that Developmental Disability Exclusion violated the Parity Act because it was "overtly applicable only to mental health conditions—specifically developmental disabilities—and does not apply to medical or surgical conditions"); *see also Craft*, 84 F. Supp. 3d at 754 (a plan's exclusion of benefits that applies only to mental health conditions violates the requirement that it "must not impose treatment limitations on mental-health benefits that are not imposed on medical/surgical benefits"); 29 C.F.R. 2590.712(c)(4)(iii), Example 6 (nonquantitative treatment limitation limiting eligibility for mental health benefits violates parity where no comparable requirement applies to medical/surgical benefits).

    2. <u>The IBT Exclusion Also Violates the Parity Act Because It Is More Restrictive than the Predominant Treatment Limitations Applied to Substantially All Medical and Surgical Benefits Covered by the Plan</u>.

The IBT Exclusion not only violates the Parity Act's prohibition on "separate" treatment limitations, but also contravenes the Parity Act because it is "more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits[]." 29 U.S.C. § 1185a(3)(A)(ii); *see generally Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1261-62

(D. Utah 2016) (explaining that the Parity Act prohibits both "separate" treatment limitations as well as "more restrictive" treatment limitations). The IBT Exclusion carves out and rejects from coverage the *core* treatment for Autism: ABA therapy. Indeed, even UBH recognizes that ABA is a vital form of treatment for Autism. Supp. Stmt. at Fact 28 (citing UBH clinical policy describing ABA as "proven" for "the treatment of autism spectrum disorder in children," which links to list of state mandates for Autism treatment, including ABA). *See also*, *e.g.*, *id.* at Facts 31-32 (American Academy of Child and Adolescent Psychiatrists explains that ABA has "been repeatedly shown to have efficacy" for treating Autism, while "[t]here is a lack of evidence for most other forms of psychosocial intervention."); *id.* at Fact 35 (all 50 states and the District of Columbia require insurance plans governed by state law to cover ABA); *id.* at Facts 28-41.[3]

There are no similarly restrictive treatment limitations for covered medical/surgical conditions under the Wipro Plan (*e.g.*, the Plan does not purport to cover cancer and then categorically exclude chemotherapy). *See* Supp. Stmt. at Facts 42-43. Put another way, "substantially all" medical and surgical benefits under the Wipro Plan provide access to the primary treatment modality for physical health conditions. The IBT Exclusion, which excludes coverage for the primary treatment modality for a mental health condition, is plainly illegal. *See A.F.*, 35 F. Supp. 3d at 1307 ("Providence cannot provide any examples of a medical condition where an exclusion was used to deny coverage of the primary and widely-respected medically necessary treatment for that medical condition. Because of the broad-based Developmental

---

[3] Courts have also uniformly recognized that ABA is an effective and well-established treatment. *See, e.g.*, *Potter v. Blue Cross Blue Shield of Mich.*, No. 10-cv-14981, 2013 WL 4413310, at *7 (E.D. Mich. Mar. 30, 2013) (denial of ABA is arbitrary and capricious: "[T]he clinical studies cited in [Blue Cross Blue Shield's] policy statement overwhelmingly conclude that ABA is 'effective.'"); *McHenry v. PacificSource Health Plans*, 679 F. Supp. 2d 1226, 1237-38 (D. Or. 2010) ("Based upon a thorough examination of the record, this court concludes that the weight of the evidence demonstrates that ABA therapy is firmly supported by decades of research and application and is a well-established treatment modality of autism and other PDDs. . . . ABA therapy has become one of the standard treatment options for autistic children throughout the nation."); *Parents League for Effective Autism Servs. v. Jones-Kelley*, 565 F. Supp. 2d 905, 917 (S.D. Ohio 2008), *aff'd sub nom. Parents' League for Effective Autism Servs. v. Jones-Kelley*, 339 F. App'x 542 (6th Cir. 2009) ("Plaintiffs provided sufficient evidence that ABA therapy, when recommended by a licensed practitioner of the healing arts, is a medically necessary service which provides the maximum reduction of a mental or physical disability.").

Disability Exclusion, Providence covers mental health conditions at a different level than medical conditions in violation of the parity obligations.").[4]

## V. CONCLUSION

The Wipro Plan's IBT Exclusion clearly violates the Parity Act and Defendants' refusal to approve coverage for John Doe to receive ABA therapy based solely on the IBT Exclusion was illegal. As such, Plaintiff requests this Court enter Partial Summary Judgment in her favor on this issue.

Dated: June 1, 2020

ZUCKERMAN SPAEDER LLP

s/ Caroline E. Reynolds
D. Brian Hufford (admitted *pro hac vice*)
Jason S. Cowart (admitted *pro hac vice*)
Caroline E. Reynolds (admitted *pro hac vice*)
Rachel F. Cotton (admitted *pro hac vice*)

PSYCH-APPEAL, INC.
Meiram Bendat (Cal. Bar No. 198884)

*Counsel for Plaintiff*

---

[4] Although this portion of *A.F.* comes from the court's analysis of the Oregon Mental Health Parity Act, the holding applies with similar force to the federal Parity Act. Indeed, in interpreting the Oregon law, the *A.F.* court pointed to a state administrative rule requiring that treatment for mental health conditions be "subject to limitations no more restrictive" than those placed on treatment for other medical conditions. *Id.* at 1306. That language is substantively identical to the first clause of § 1185a(a)(3)(A)(ii).