UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>        Plaintiff,<br><br>   v.<br><br>UNITED BEHAVIORAL HEALTH, ET AL.,<br><br>        Defendants. | Case No.  4:19-cv-07316-YGR<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 48, 53 |

Plaintiff Jane Doe, proceeding under a pseudonym and as a representative for her minor son, John Doe, brings this action against defendants United Behavioral Health and United Healthcare Services, Inc. (collectively "United Health").  Doe maintains two causes of action for breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. section 1132(a)(3), against United Health in its role as a third-party administrator and claims administrator of an employer-funded health plan.

Now before the Court are the following motions: (1) Doe's motion for partial summary judgment (Dkt. No. 48); and (2) United Health's motion for partial summary judgment.  (Dkt. No. 53.)  The motions are fully briefed.  (*See also* Dkt. Nos. 58, 60.)  Having carefully reviewed the pleadings, the papers submitted on each motion, the parties' oral arguments, and for the reasons set forth more fully below, the Court: **GRANTS** Doe's motion for partial summary judgment, and **GRANTS IN PART** and **DENIES IN PART** United Health's motion for partial summary judgment.

**I.     BACKGROUND**[1]

The dispute in this litigation concerns an exclusion under a plan, the Wipro Limited Health Benefit Plan (the "Wipro Plan" or the "Plan"). The facts underlying the parties' cross motions for summary judgment are not generally or materially in dispute. Importantly, for these motions, the Plan explicitly excludes coverage for Applied Behavior Analysis ("ABA") and Intensive Behavioral Therapies ("IBT") that would otherwise assist children with Autism Spectrum Disorder ("Autism" or "ASD"). The facts relevant to the instant motions are as follows:

The Wipro Plan is sponsored and funded by Wipro Limited ("Wipro"), John Doe's father's former employer and a non-party. Wipro serves as both the Sponsor and Plan Administrator of the Wipro Plan. Wipro was and is solely responsible for deciding the terms of its Plan and for funding the Plan and benefits thereunder. Wipro alone under the terms of the Wipro Plan retains the right to modify, change, revise, amend or terminate the Wipro Plan at any time, for any reason, and without prior notice. The Wipro Plan is governed under ERISA. Defendant United Health is a third-party administrator for health benefit plans and serves as the claims administrator for the Wipro Plan.

From 2017 through the end of 2019, John Doe, plaintiff's son, was a beneficiary of the Wipro Plan, which is a self-funded large group, non-grandfathered commercial policy sponsored by Wipro. Although the Plan expressly covered Autism and ASD, from 2017 through 2019, it explicitly excluded coverage for "Intensive Behavioral Therapies such as Applied Behavior Analysis for Autism Spectrum Disorders" (the ABA/IBT exclusion).

John Doe was diagnosed with autism, and plaintiff sought recovery for ABA costs spent on

---

[1] For the good cause shown therein, the Court **GRANTS** the corresponding administrative motions to seal (Dkt. Nos. 47, 52, 57), which generally request the sealing of private health records relating to Doe's son. *See A.C. v. City of Santa Clara*, No. 13–cv–03276–HSG, 2015 WL 4076364, at *2 (N.D. Cal. July 2, 2015) (sealing medical records attached to motion for summary judgment); *San Ramon Reg'l Med. Ctr., Inc. v. Principal Life Ins. Co.*, No. C 10–02258 SBA, 2011 WL 89931, at *1 n.1 (N.D. Cal. Jan. 10, 2011) (sealing sua sponte medical records attached to motion to dismiss); *NuCal Foods, Inc. v. Quality Egg LLC*, No. CIV S–10–3105 KJM–CKD, 2012 WL 6629573, at *5 (E.D. Cal. Dec. 19, 2012) (sealing medical information that was "sensitive and private").

his treatment. United Health denied these expenses under the ABA/IBT exclusion in 2016, and, more recently, in 2019. In response, plaintiff filed her initial complaint on November 7, 2019 on behalf of John Doe and a then proposed putative class.

Effective January 1, 2020, the Wipro Plan no longer included the ABA/IBT exclusion and began covering these treatments. United Health filed a motion to dismiss the complaint on January 20, 2020. On February 4, 2020, John Doe's benefits under the Wipro Plan terminated as his father was no longer employed by Wipro. Plaintiff then filed the operative first amended complaint on February 20, 2020. The Court later denied the then-pending motion to dismiss as moot in light of the filing of the first amended complaint.

## II. LEGAL STANDARD

Summary judgment is appropriate when no genuine dispute as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings, depositions, discovery responses, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id*. at 247-48 (dispute as to a material fact is "genuine" if sufficient evidence exists for a reasonable jury to return a verdict for the non-moving party) (emphases in original). When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011).

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (alteration and internal quotation marks omitted). Thus, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each

side, whether a judgment may be entered in accordance with the Rule 56 standard." *Id*. (quoting Wright, et al., Federal Practice and Procedure § 2720, at 335-36 (3d ed. 1998)). If, however, the cross-motions are before the court at the same time, the court must consider the evidence proffered by both sets of motions before ruling on either one. *Id.* at 1135-36.

### III. ANALYSIS

United Health asserts two bases for summary judgment: First, it argues that both claims brought under section 1132(a)(3) fail because United Health was not a fiduciary given that it was not exercising a discretionary action in applying the plain language of the ABA/IBT exclusion. Second, United Health asserts that the ABA/IBT exclusion is not a "treatment limitation" under the Mental Health Parity and Addiction Equity Act (the "Parity Act"). *See* 29 U.S.C. § 1185a. With respect to this second ground, Doe brings a cross motion for partial summary judgment arguing that the ABA/IBT exclusion *does* violate the Parity Act. The Court addresses each in turn.[2]

#### A. Whether United Health is a Fiduciary

United Health avers that summary judgment is appropriate because the enforcement of the ABA/IBT exclusion was not a discretionary act as would be required for claims for breaches of fiduciary duty under ERISA. More specifically, United Health argues it was not a fiduciary as to the enforcement of the exclusion. Said differently, as the claims administrator, not the Plan sponsor, United Health had no discretion but to enforce the plain written terms of the Wipro Plan, which explicitly excluded both ABA and IBT. Doe urges the opposite, namely that United Health's enforcement of the terms of the Plan was a discretionary act, and that the Plan itself explicitly gives United Health discretion.

---

[2] The Court notes that United Health also brought the motion on the grounds that (i) declaratory relief was unavailable where Doe brought claims under section 1132(a)(3) and (ii) Doe otherwise lacks Article III standing to pursue such relief. In response, plaintiff advised that while she "does not concede [United Health's] arguments about standing or the availability of declaratory relief," Doe "in the interest of efficiency and to conserve resources . . . withdraws her prayer for declaratory relief." (Dkt. No. 58 at 20.) Accordingly, in light of plaintiff's withdrawal for declaratory relief, the Court **GRANTS** United Health's motion for summary judgment as to plaintiff's request for declaratory relief.

In general, "[i]n every case charging breach of ERISA fiduciary duty . . . the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to the complaint." *Pegram v. Herdich*, 530 U.S. 211, 226 (2000). Above all, "[f]iduciary status under ERISA is not an 'all-or-nothing concept,' and 'a court must ask whether a person is a fiduciary *with respect to the particular activity at issue*.'" *In re JDS Uniphase Corp. Erisa Litig.*, No. C 03- 04743 CW (WWS), 2005 WL 1662131, at *2 (N.D. Cal. July 14, 2005) (emphasis in original) (citation omitted). Courts consequently recognize that a party may be a fiduciary for certain discretionary conduct related to a plan, but not for other non-discretionary conduct alleged to violate ERISA. *See, e.g.*, *Wilson v. Bank of Am. Pension Plan for Legacy Companies*, No. 18-CV- 07755-TSH, 2019 WL 4479677, at *8 (N.D. Cal. Sept. 18, 2019) (dismissing breach of fiduciary duty claim because "even if" the third-party administrator defendant "was acting as a fiduciary when it did other things, it was not acting as a fiduciary" when it engaged in the specific act underlying the breach of fiduciary duty claim).

Under Ninth Circuit authority, a court determines whether a party is a fiduciary with respect to actions performed under an ERISA plan in one of two ways. First, the plan instrument can identify the party as the "named fiduciary" for that purpose. *See Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 653-54 (9th Cir. 2019) (citing 29 U.S.C. § 1102(a)(2)). Here, the Wipro Plan does not identify either United Health defendant as a fiduciary, and thus, it is not a fiduciary under this test.

Under the second test, a party may be a "functional" fiduciary with respect to a plan to the extent it (i) "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets" or (ii) "has discretionary authority or discretionary responsibility in the administration" of the plan. *Id.* (quoting § 1002(21)(A)) (affirming dismissal of breach of fiduciary duty claim where defendants were not exercising discretion when taking the action subject to the complaint); *see also Parker v. Bain*, 68 F.3d 1131, 1139-40 (9th Cir. 1995) ("ERISA's definition of 'fiduciary' is

5

functional rather than formal. . . . [I]f [the party] in fact exercised any discretionary authority over Plan assets, then he was a fiduciary, regardless whether the Plan itself named him as such."). By contrast, administrative, ministerial functions that do not involve discretionary authority or control are not fiduciary in nature and do not give rise to fiduciary responsibility for those actions. *See CSA 401(K) Plan v. Pension Professionals, Inc.*, 195 F.3d 1135, 1138-39 (9th Cir. 1999) ("[T]hird-party administrators are not fiduciaries if they merely perform ministerial functions" unless they "step outside the scope of rendering administrative services and in fact exercise discretionary authority or control over the Plan."). "A plan's characterization of a claim administrator's duties as 'ministerial' is not determinative: [a court] look[s] past the plan's characterization to determine what duties the administrator actually performs." *King v. Blue Cross and Blue Shield of Illinois*, 871 F.3d 730, 745-46 (9th Cir. 2017).

Relatedly, the Department of Labor and courts have confirmed that entities do not act in a fiduciary capacity when they perform "administrative functions for an employee benefit plan [] within a framework of policies, interpretations, rules, practices and procedures made by other persons" such as the "application of rules determining eligibility for participation or benefits," "[p]rocessing of claims," and "[c]alculation of benefits." *See* 29 C.F.R. § 2509.75-8, D-2; *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1325 (9th Cir. 1985) (claims administrator does not "exercise fiduciary responsibilities in the consideration of claims" if it "performs only administrative functions, processing claims within a framework of policies, rules, and procedures established by" the employer), *overruled on other grounds in Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202 (9th Cir. 2011); *Kyle Railways, Inc. v. Pac. Admin. Servs., Inc.*, 990 F.2d 513, 516 (9th Cir. 1993) ("[T]hird party administrators like Pacific are not fiduciaries under ERISA when they merely perform ministerial duties or process claims."). Rather, "it is a person's ability to make policy decisions outside of a pre-existing or separate framework of policies, practices and procedures which saddles that person with [ERISA] fiduciary liability." *Munoz v. Prudential Ins. Co. of Am.*, 633 F. Supp. 564, 568 (D. Colo. 1986).

Here, United Health admits that it is the Wipro Plan's claims administrator, and that United Health was delegated the responsibility to administer benefits under the Wipro Plan.

6

However, it claims that its actions in applying the exclusion was merely an administrative task, and not one that allows any discretion. In sum, United Health emphasizes that it exercised no discretion in applying the plain language of the exclusion and had no authority to do so because "an administrator lacks discretion to rewrite the Plan." *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460 (9th Cir. 1996).[3]

Having considered the myriad cases which determine on a case-by-case basis whether a defendant "was acting as a fiduciary (that is, was performing a fiduciary function) *when taking the action subject to complaint*," United Health does not persuade. *See Depot*, 915 F.3d at 654 (emphasis supplied); *see also Acosta v. Brain*, 910 F.3d 502, 518 (9th Cir. 2018) (noting that "courts must examine the conduct at issue" to determine whether it gives rise to fiduciary responsibility). "A benefit determination under ERISA . . . is generally a fiduciary act" and is "part and parcel of the ordinary fiduciary responsibilities connected to the administration of a plan." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 218-19 (2004); s*ee also, id.* at 220 (concluding that ERISA statutory scheme "strongly suggests that the ultimate decisionmaker in a plan regarding an award of benefits must be a fiduciary and must be acting as a fiduciary when determining a participant's or beneficiary's claim"); *Pegram*, 530 U.S. at 23 ("At common law, fiduciary duties characteristically attach to decisions about managing assets and distributing property to beneficiaries."). Indeed, "[i]nsurers generally act in a fiduciary capacity . . . when making a discretionary determination about whether a claimant is entitled to benefits." *Depot*, 915 F.3d at 654 n.5. Thus, where an entity "has the authority to grant, deny, *and* review . . . claims[, a]ny one of these abilities would be sufficient to confer fiduciary status under ERISA." *King*, 871 F.3d at 746 (emphasis in original); *see also Kyle Railways*, 990 F.2d at 517-518 ("[W]e do not narrowly interpret the phrase 'discretion . . . to determine claims' to apply only to the initial decision to grant or deny benefits. Where the plan provides the insurer with the discretionary responsibility of making final claims decisions, the insurer is a fiduciary under [ERISA]." (internal

---

[3] Doe does not dispute that United Health has no discretion to modify or alter the terms of the Plan. (*See* Material Fact 9 (undisputed: "Wipro alone retains the right to modify, change, revise, amend or terminate the Wipro Plan at any time, for any reason, and without prior notice.").)

7

quotation marks omitted)).

United Health undisputedly was given the authority to make benefits determination under the Wipro Plan and did so when rejecting Doe's coverage for expenses incurred for her son. United Health's arguments focusing solely on the application of the exclusion without regard to its application in Doe's benefits determination impermissible narrows the "action" to be considered in the functional fiduciary analysis discussed above. Significantly, United Health cites to no analogous case where a court found a similar entity a non-fiduciary by hyper focusing on the specific application of the plain language of an exclusion in denying benefits and ignoring that an entity otherwise *made* a benefits determination that would generally confer fiduciary status on that entity. Indeed, United Health's arguments ignore the second phrase of the functional fiduciary analysis, providing that an entity is also a fiduciary where it "exercises any authority or control respecting management or disposition of its assets." Thus, the Court finds United Health's actions with respect to denying Doe's benefits claim is sufficient to demonstrate that it is a fiduciary.

United Health's argument that it lacked discretion to rewrite the plan do not compel a different result. While the parties provide no binding authority from the Ninth Circuit, multiple circuit courts agree that, in general, plan terms cannot override fiduciary duties. *See, e.g.*, *In re Citigroup ERISA Litig.*, 662 F.3d 128, 139 (2d Cir. 2011) (plan terms do not override ERISA's fiduciary requirements); *Eisenrich v. Minneapolis Retail Meat Cutters & Food Handlers Pension Plan*, 574 F.3d 644, 648 (8th Cir. 2009); *Laborer's Nat'l Pension Fund v. Northern Trust Quantitative Advisors, Inc.*, 173 F.3d 313, 322 (5th Cir. 1999); *Herman v. NationsBank Trust Co.*, 126 F.3d 1354, 1368-69 & n.15 (11th Cir. 1997); *Coleman v. Interco Inc. Divisions' Plans*, 933 F.2d 550, 551 (7th Cir. 1991) ("ERISA [] trumps" divergent plan language). Section 1104(a) lists the duties of ERISA fiduciaries, including the duty to administer plans "in accordance with the documents and instruments governing the plan *insofar as such documents and instruments are consistent with the provisions of*" ERISA. 29 U.S.C. § 1104(a)(1)(D) (emphasis supplied). Thus, the statute explicitly requires a fiduciary to apply a plan's terms, but *only* if those terms do not violate ERISA. *See, e.g.*, *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014) (Section 1104(a)(1)(D) "makes clear that the duty of prudence [in § 1104(a)(1)(B)] trumps the instructions

of a plan document, such as an instruction to invest exclusively in employer stock even if financial goals demand the contrary."). Here, United Health cannot hide behind the plan terms, especially where ERISA imposes specific and independent duties on its fiduciaries to otherwise comply with the provisions of ERISA.

In sum, the Court concludes that United Health is a fiduciary sufficient for Doe to maintain her ERISA claims as stated in the complaint. Accordingly, the Court **DENIES** United Health's motion for summary judgment with respect to its fiduciary status.

### B. Application of the Parity Act

This action raises the issue of whether the ABA/IBT Exclusion violates the Parity Act which provides in pertinent part:

> (A) In general. In the case of a group health plan (or health insurance coverage offered in connection with such a plan) that provides both medical and surgical benefits and mental health or substance use disorder benefits, such plan or coverage shall ensure that –
>
> ***
>
> (ii) the treatment limitations applicable to such mental health or substance use disorder benefits are **no more restrictive** than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan . . . and there are **no separate treatment limitations** that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185a(a)(3)(A) and (A)(ii) (emphasis supplied).

Here, the ABA/IBT exclusion only applies to mental health disorders. It reads:

> **Mental Health/Substance Use Disorder**
> In addition to all other exclusions listed in this Section 8, *Exclusions and Limitations*, the exclusions listed directly below apply to services described under *Mental Health Services, Neurobiological Disorders – Austism Spectrum Disorder Services* and/or *Substance-Related and Addictive Disorders Services* in Section 6, *Additional Coverage Details.*
> ***
> 8. Intensive Behavioral Therapies such as Applied Behavior Analysis for Autism Spectrum Disorders.

(PA 81-82.) On its face, the ABA/IBT exclusion creates a separate treatment limitation applicable *only* to services for a mental health condition (Autism). By doing so, the exclusion violates the plain terms of the Parity Act. *See A.F. ex rel. Legaard v. Providence Health Plan*, 35 F. Supp. 3d

1298, 1315 (D. Or. 2014) (holding that developmental disability exclusion violated the Parity Act because it was "overtly applicable only to mental health conditions—specifically developmental disabilities—and does not apply to medical or surgical conditions"); *see also Craft v. Health Care Service Corp.*, 84 F. Supp. 3d 748, 754 (N.D. Ill. 2015) (a plan's exclusion of benefits that applies only to mental health conditions violates the requirement that it "must not impose treatment limitations on mental-health benefits that are not imposed on medical/surgical benefits"); 29 C.F.R. 2590.712(c)(4)(iii), Example 6 (nonquantitative treatment limitation limiting eligibility for mental health benefits violates parity where no comparable requirement applies to medical/surgical benefits).

Not only does the exclusion violate the "separate" treatment limitations in the Act, but it also contravenes the Parity Act by requiring "more restrictive [limitations] than the predominant treatment limitations applied to substantially all medical and surgical benefits[]." 29 U.S.C. § 1185a(3)(A)(ii); *see generally Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1261-62 (D. Utah 2016) (explaining that the Parity Act prohibits both "separate" treatment limitations as well as "more restrictive" treatment limitations). The exclusion carves out and rejects from coverage a *core* treatment for Autism: ABA therapy. As Doe correctly highlights, there are no comparable medical/surgical exclusions in the Wipro Plan. Thus, the exclusion, which excludes coverage for the primary treatment modality for a mental health condition, violates the plain language of the statute. *See also A.F.*, 35 F. Supp. 3d at 1307 (analyzing substantively similar state law, stating that "Providence cannot provide any examples of a medical condition where an exclusion was used to deny coverage of the primary and widely-respected medically necessary treatment for that medical condition" and "[b]ecause of the broad-based Developmental Disability Exclusion, Providence covers mental health conditions at a different level than medical Disability Exclusion, Providence covers mental health conditions at a different level than medical"). In sum, the ABA/IBT exclusion violates the Parity Act.[4]

---

[4] The Court notes that several district courts have reached similar conclusions with considering comparable policy exclusions. For example, in *A.F.*, the United States District Court of Oregon was asked to determine whether a health plan's blanket exclusion of ABA treatment for Autism under an exclusion for services related to developmental delays (the "Developmental

10

Despite the foregoing, United Health advances three reasons to justify the claim that the ABA/IBT exclusion does not violate the Parity Act.[5] None compel a different result. The Court addresses each.

First, United Health cites to the provisions of the Parity Act which state that "[n]othing in this section shall be construed . . . as requiring a group health plan (or health insurance coverage offered in connection with such a plan) to provide any mental health or substance use disorder benefits." 29 U.S.C. § 1185a(b)(1). Under this provision, it avers that United Health and the Plan are not required to provide specific mental health benefits relating to Autism.

United Health misses the point of the Act. Courts have generally found that the provision means a plan can choose to provide *no* mental health benefits at all without violating the Parity Act. *See, e.g.*, *Joseph F.*, 158 F. Supp. 3d at 1262 (discussing 29 U.S.C. § 1185a(b)(1)). However, "once a plan does provide such benefits, the plan must do so on a level that is on par with the benefits it provides for medical and surgical benefits. And once provided, the Parity Act prohibits imposing treatment limitations applicable only to mental health benefits." *Id.* Other courts considering similar arguments and Autism-related exclusions have reached a similar conclusion: that, because the plan chose to cover autism, the Parity Act prohibits the plan from using a blanket exclusion to "deny coverage of ABA therapy" because it was "a 'separate treatment limitation' that applie[d] only to mental health disorders." *A.F.*, 35 F. Supp. 3d at 1315. The "plain and ordinary meaning of 'treatment limitation' include[d] and encompasse[d]" the

---

Disability Exclusion") violated the Parity Act. 35 F. Supp. 3d at 1302. As here, the plan at issue in *A.F.* explicitly covered treatment for Autism but excluded all coverage for ABA. *Id.* In determining the Developmental Disability Exclusion was a treatment limitation under the Parity Act, the *A.F.* court held the "plain and ordinary meaning of 'treatment limitation' includes and encompasses" the plan's total exclusion of ABA therapy services related to Autism. *Id.* at 1315. Other federal district courts have further confirmed that blanket exclusions of treatment options for mental health disorders constitute treatment limitations that violate the Parity Act. *See Craft*, 84 F. Supp. at 754 (concluding that the categorical exclusion of residential treatment for mental health disorders was a treatment limitation that violated the Parity Act); *Munnelly v. Fordham University Faculty*, 316 F. Supp. 3d 714, 733-34 (S.D.N.Y. 2018) (finding that a plan's categorical exclusion of coverage for mental health residential treatment services violated the Parity Act).

[5] The Court notes that United Health does *not* challenge that the ABA/IBT exclusion only applies to mental health benefits, nor does United Health dispute that such limitation is more restrictive than those provided for medical and surgical benefits.

11

exclusion because it was "a limitation on the treatment of plan members with developmental disabilities." *Id*. Although the plan was "free under the Federal Parity Act not to cover autism," after it "chooses to cover autism, any limitation on services for autism must be applied with parity." *Id*. The Court agrees. Here, because the Wipro Plan chose to cover Autism, any limitation on such services must be applied with parity as required by law.

United Health's second argument focuses on the definition of "treatment limitations" in the implementing regulations which provides:

> *Treatment limitations* include limits on benefits based on the frequency of treatment, number of visits, days of coverage, days in a waiting period, or other similar limits on the scope or duration of treatment. Treatment limitations include both quantitative treatment limitations, which are expressed numerically (such as 50 outpatient visits per year), and nonquantitative treatment limitations, which otherwise limit the scope or duration of benefits for treatment under a plan or coverage. (*See* paragraph (c)(4)(ii) of this section for an illustrative list of nonquantitative treatment limitations.) *A permanent exclusion of all benefits for a particular condition or disorder, however, is not a treatment limitation for purposes of this definition.*

29 C.F.R. 2590.712(a) (emphasis supplied); *see also* 29 U.S.C. § 1185a(a)(3)(B)(iii) ("The term 'treatment limitation' includes limits on the frequency of treatment, number of visits, days of coverage, or other similar limits on the scope or duration of treatment."). With respect to this definition, two issues arise. One, United Health claims that, by definition, because the exclusion in the Plan did not limit "the frequency of treatment, number of visits, days of coverage, [or] days in a waiting period," the Court must find under the doctrine of *ejusdem generis* (Latin for "of the same kind") that the exclusion is not covered by the definition of "treatment limitation."

The Court disagrees. At a minimum, "zero" treatment has quantitative relevance. *See, e.g.*, *Craft*, 84 F. Supp. 3d at 753-54 (refusing to construe the statute as applying only to quantitative limitations through doctrine of *ejusdem generis*, explaining that "[t]he practical effect of the RTC exclusion is that Jane Doe receives fewer hours (or days) of coverage for medically necessary nursing care than, for example, an elderly person would receive to rehabilitate a broken hip") *see also* Charles Seife, *Zero: The Biography of a Dangerous Idea* (2000) (explaining the value of zero). However, even assuming that zero did not have such independent quantitative relevance, the language of the above regulation further references and includes quantitative and

12

non-quantitative treatment limitations suggesting a broad reading of the definition of treatment limitation. This reading is consistent with other district courts that have considered similar arguments and rejected such a narrowed reading of the treatment limitation provision. *See A.F.* 35 F. Supp. 3d at 1314-15 (explaining that while the regulation "provides examples of what treatment limitations might be," it also "explicitly note[s] that the Federal Parity Act applies to both quantitative and nonquantitative limitations," and therefore refusing to construe the first sentence of the regulatory definition as restricting what qualified as a nonquantitative limitation); Interim Final Rules under the Parity Act, 75 Fed. Reg. 5410-01, 5413 (Feb. 2, 2010) ("The statute describes the term as including limits on the frequency of treatment, number of visits, days of coverage, or other similar limits on the scope or duration of treatment, but *it is not limited to such types of limits*." (emphasis supplied)). The Court therefore declines to apply the doctrinal tool of *ejusdem generis* to find a limitation on what types of treatments are included in the treatment limitation definition under the Parity Act.

Two, the parties argue different interpretations of the last sentence: "*A permanent exclusion of all benefits for a particular condition or disorder, however, is not a treatment limitation for purposes of this definition*." This sentence explicitly defines what is *not* a treatment limitation under the Parity Act. United Health urges that the words "a permanent exclusion of all benefits" proves that the ABA/IBT exclusion falls within the purview of this sentence, and therefore should not be considered a treatment limitation. Hence, the Parity Act should not apply. Doe, by contrast, argues that United Health ignores the balance of the phrase "for a particular condition or disorder."

The Court agrees with Doe. Focusing only on the "permanent exclusion" phrase would effectively eviscerate the point of the Act. The Court must give meaning to all words when construing a statute or regulation. Thus, the excluding definition concerns those instances where a complete exclusion of coverage for a "condition or disorder" exist (*e.g.* Autism), and not merely to instances where the plan, as here, excludes benefits for particular treatments (*e.g.* ABA or IBT) for an already covered condition or disorder. *See* 29 C.F.R. § 2590.712(a).

Indeed, courts that have considered similar arguments made by United Health have

1    rejected such an interpretation as being too broad.  *See, e.g.*, *Smith v. U.S. Office of Pers. Mgmt.*,
2    80 F. Supp. 3d 575, 583 (E.D. Pa. 2014) (rejecting party's reading of the definition, that the
3    regulations' definition of "treatment limitation" "expressly eliminates exclusions from parity
4    analysis" such that a categorical exclusion of coverage for residential treatment of substance use
5    disorders was "lawful" under the Parity Act, as "too broad" because "a residential treatment
6    facility is not fairly categorized as a 'condition or disorder'").  The definition must be read in its
7    entirety.  The ABA/IBT exclusion therefore fails to satisfy this plain language definition of what is
8    *not* a treatment limitation.

9          Finally, United Health's third argument is derivative of its second argument with respect to
10   the doctrine of *ejusdem generis*.  United Health focuses on the statutory and regulatory language
11   requiring that financial requirements and treatment limitations are "no more restrictive" than
12   medical and surgical benefits covered by the plan.  *See* 29 U.S.C. § 1185a(a)(3)(A); *see also* 29
13   C.F.R. § 2590.712(c)(2)(i).  United Health's argument requires the Court to accept the premise
14   that the definition of "treatment limitation" should be narrowly construed to include only
15   "quantitative limitations."  No basis exists for such a reading.  The Court agrees with the non-
16   controversial reading that the "no more restrictive" standard applies to "financial requirements."[6]
17   That said, the Court would have to import the word *quantitative* to read such a limitation into the
18   term "treatment limitations."  The notion that such a narrowing can be based, again, on the
19   doctrine of *ejusdem generis* fails for the same reasons stated above.

20         Neither the statute nor the regulations support United Health's argument the statute should
21   be narrowly read as limited to financial requirements and *quantitative* treatment limitations.[7]  The
22   statute does not say the "more restrictive" standard applies only to "quantitative" treatment
23   limitations; it facially applies to *all* treatment limitations.  *See* 29 U.S.C. § 1185a(a)(3)(A)(ii), (B).

---

[6] Neither party argues that the ABA/IBT exclusion is a "financial requirement" as used by the regulations.  Instead, United Health's third argument turns on the meaning of "treatment limitation" as stated in the regulations and statute.

[7] The Court points out again that zero has some quantitative relevance that United Health overlooks in its arguments.  For purposes of addressing United Health's arguments, the Court assumes zero has no quantitative meaning.

So do the regulations, contrary to United Health's citation:

> A group health plan . . . that provides both medical/surgical benefits and mental health or substance use disorder benefits may not apply any financial requirement or *treatment limitation* to mental health or substance use disorder benefits in any classification that is more restrictive than the predominant financial requirement or *treatment limitation* of that type applied to substantially all medical/surgical benefits in the same classification. Whether a financial requirement *or treatment limitation* is a predominant financial requirement or *treatment limitation* that applies to substantially all medical/surgical benefits in a classification is determined separately for each type of financial requirement or *treatment limitation*. The application of the rules of this paragraph (c)(2) to financial requirements and quantitative treatment limitations is addressed in paragraph (c)(3) of this section; *the application of the rules of this paragraph (c)(2) to nonquantitative treatment limitations is addressed in paragraph (c)(4) of this section.*

29 C.F.R. § 2590.712(c)(2)(i) (emphasis supplied). Indeed, based on the words in the regulation, the comparative prohibition between mental health treatment limitations as compared to other surgical and medical limitations contains no such "quantitative" treatment limitations.

In sum, the Court finds that the ABA/IBT exclusion violates the Parity Act. Accordingly, the Court **GRANTS** plaintiff's motion for partial summary judgment and **DENIES** United Health's motion for partial summary judgment on this ground.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Doe's motion for partial summary judgment and **GRANTS IN PART** and **DENIES IN PART** United Health's motion for partial summary judgment. Within twenty-one (21) days from the date of this Order, the parties are **ORDERED** to meet and confer and to file a status report and proposed schedule for the remainder of this matter in light of this Order.

This Order terminates Docket Numbers 47, 48, 52, 53, and 57.

**IT IS SO ORDERED.**

Dated: March 5, 2021

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**